**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: ___________________________

BURGER KING COMPANY LLC,

Plaintiff,

vs.

FRITZ MANAGEMENT, LLC and GUILLERMO PERALES,

Defendants.
________________________________/

# COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Burger King Company LLC ("BKC") sues Defendants Fritz Management, LLC ("Fritz Management") and Guillermo Perales ("Perales") (Fritz Management and Perales shall be referred to collectively as "Defendants") and states:

1. This is an action to enjoin Defendants' unauthorized use and display of BKC's valuable trademarks and service marks in connection with the unlawful operation of a restaurant as an authorized BURGER KING® restaurant. Additionally, this is an action for damages due to Defendants' breach of their franchise agreement and guaranty with BKC.

## THE PARTIES

2. Plaintiff BKC is a Florida limited liability company with its principal place of business in Miami, Florida. The sole member of BKC is Burger King Investments, Inc., a Delaware company with its principal place of business in Miami, Florida.

3. Defendant Fritz Management is a Texas limited liability company with its principal place of business in Dallas, Texas.

4. Defendant Perales, who is the sole member of Fritz Management, is a citizen and resident of the State of Texas.

**JURISDICTION AND VENUE**

5. BKC, the franchisor of the BURGER KING® brand, franchises stores in the United States that are involved in, among other things, the sale of selected foods and beverages. BKC's franchise operations are conducted and supervised from its headquarters located in Miami, Florida.

6. BKC on the one hand and Defendants Fritz Management and Perales, each individually, on the other, have carried on a continuous course of direct communications by mail, e-mail and by telephone through BKC's headquarters in Miami, Florida.

7. The course of dealing between BKC, Fritz Management and Perales shows that decision-making authority is vested in BKC's headquarters in Miami, Florida.

8. Both Fritz Management and Perales have separately voluntarily entered into contractual relationships with BKC which envisioned continuing and wide-reaching contacts with BKC at BKC's headquarters in Miami, Florida.

9. Both Fritz Management and Perales, separately, have purposefully availed themselves of the benefits and protection of Florida law by entering into agreements with BKC which expressly provide that Florida law will govern any disputes among the parties.

10. Both Defendants negotiated with BKC in Miami, Florida for the acquisition of long-term franchise agreements with the knowledge that they would benefit from their affiliation with BKC.

11. Both Defendants have separately breached contracts required to be performed in Florida and engaged in tortious conduct in Florida and caused injury to BKC in Florida by failing

to operate and maintain their BURGER KING® Restaurant in accordance with the standards and specifications established by BKC, by failing to comply with their agreements' post-termination obligations and by using BKC's trademarks without BKC's authorization and consent.

12. This Court has jurisdiction over this action based upon:

(a) Section 39 of the Lanham Act, 15 U.S.C. 1121, and 28 U.S.C. 1331, 1337, and 1338 (a), for the claims arising out of Defendants' violations of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. 1114 and 1125(a);

(b) 28 U.S.C. 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. 1367, for the claims arising out of Defendants' common law unfair competition and Defendants' breach of contract; and

(c) 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

13. This Court also has jurisdiction over this action based upon 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

14. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 as a substantial part of the events and omissions giving rise to BKC's claims occurred within this judicial district.

15. Venue is also proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 and the forum selection clauses agreed to by the parties in their written agreements. In the parties' agreements, Defendants agreed that the United States District Court for the Southern District of Florida shall be the venue and exclusive proper forum in which to adjudicate any case or controversy arising, either directly or indirectly, under or in connection with the agreements. Additionally, Defendants agreed not to contest or challenge the jurisdiction or venue of this

Court. The parties' agreements are governed by Florida law, involve consideration of not less than $250,000 and bear a substantial relationship to Florida, where BKC is a resident and is headquartered.

## BKC'S MARKS

16. To identify the source, origin and sponsorship of BKC's facilities, products, and services, BKC has extensively employed, caused to be advertised and publicized throughout the United States (and elsewhere) certain distinctive symbols as trademarks and service marks (the "Marks"). BKC owns and was the first to adopt and use the Marks as trademarks and services marks and all right, title, and interest in and to the Marks and the design, décor, and image of BURGER KING® restaurants remains vested solely in BKC in Miami, Florida.

17. BKC operates and franchises BURGER KING® restaurants using the Marks on signs, menu boards, posters, uniforms, packaging, cups, and other items in advertising to the public through television, print media, and the internet.

18. Set forth below is an abbreviated listing of the Marks registered to BKC in the United States Patent and Trademark Office:

| Trademark | Status | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|
| BURGER KING | Registered | 09/09/1968 | 869775 | 05/20/1969 | 29, 32 |
| BURGER KING | Registered | 03/12/2007 | 3355280 | 12/18/2007 | 43 |
| BURGER KING & Crescent Design | Registered | 03/08/1999 | 2428846 | 02/13/2001 | 42 |
| BURGER KING & Crescent Design | Registered | 11/12/2002 | 2755927 | 08/26/2003 | 43 |

| Trademark | Status | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|
| BURGER KING & Hamburger Design | Registered | 02/20/1998 | 2262585 | 07/20/1999 | 14, 25 |
| BURGER KING & Hamburger Design | Registered | 05/27/1969 | 901311 | 10/20/1970 | 42 |
| BURGER KING & Hamburger Design (Color, Red & Orange) | Registered | 02/09/1976 | 1057250 | 01/25/1977 | 42 |
| BURGER KING & Hamburger Refresh Design | Registered | 05/01/2020 | 6397840 | 06/22/2021 | 29, 30, 43 |
| BURGER KING & Hamburger Refresh Design (color) | Registered | 05/01/2020 | 6397841 | 06/22/2021 | 29, 30, 43 |
| BURGER KING YOUR WAY & Hamburger Refresh | Registered | 12/18/2020 | 6702821 | 04/12/2022 | 43 |
| KING JR | Registered | 11/18/2015 | 5392316 | 01/30/2018 | 29, 30, 43 |
| KING DEAL | Registered | 06/23/2009 | 3808360 | 06/22/2010 | 43 |
| WHOPPER | Registered | 09/09/1968 | 899775 | 09/29/1970 | 29 |
| WHOPPER | Registered | 09/03/2009 | 3736973 | 01/12/2010 | 30 |
| WHOPPER | Registered | 07/29/2009 | 3736954 | 01/12/2010 | 43 |

19. The registrations of the Marks are currently in full force and effect, and BKC has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.

20. Pursuant to agreements between BKC and its franchisees or licensees, including

Defendants, BKC grants a limited license and authority to use and display the Marks, but only in such manner and at such locations and times as are expressly authorized by BKC.

21. In no event is a franchisee or licensee authorized to use the Marks after the expiration of termination of its franchise agreement or license agreement. Such unauthorized use is expressly prohibited under the terms of the franchise agreements and license agreements, including the Defendants' agreements with BKC.

22. BKC and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting BURGER KING® restaurants, services, and products.

23. The substantial investment made in the Marks has resulted in valuable goodwill for the Marks in the United States and elsewhere and for the restaurants, products, and services bearing those Marks. BKC's products and services have met with popular approval and, as a result of BKC's extensive sales, advertising, promotion, and publicity, the public throughout the world is familiar with the Marks. The products and services associated with the Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with BKC.

**THE BURGER KING SYSTEM**

24. BKC has developed a comprehensive restaurant operating system (the "System") for all BKC franchisees and licensees worldwide in order to protect the image of the BURGER KING® restaurants and to ensure uniform, high-quality standards. The detailed "Brand Standard and Procedures" of the System are set forth in BKC's Operating Standards Manual (the "OPS Manual").

25. Every BKC franchisee and licensee is required by its agreement to operate its licensed restaurant in accordance with the OPS Manual. The OPS Manual sets forth in detail the

mandatory BURGER KING® restaurant operating standards, specifications, and procedures, including rules governing areas such as food preparation, handling, cleanliness, health, sanitation, quality, and speed of service. In addition to these strict quality, service, and cleanliness requirements, the OPS Manual prescribed specified training procedures to ensure that these requirements are met. The OPS Manual contains confidential BKC information, which a franchisee is permitted to have only during the term of the franchise agreement or license agreement.

26. BKC offers a broad range of services to its franchisees and licensees in order to monitor and assist their compliance with these standards. This enables BKC to safeguard the integrity of BURGER KING® restaurants, the System, and the Marks.

27. Integral to BKC's compliance and assistance program are periodic inspections and consultation undertaken by personnel specially trained to observe and advise in all areas of restaurant operating procedure.

28. As a result of its substantial expenditures of money and effort in developing and implementing the System, BKC has established a high reputation and positive image with the public as to the quality of products and services available at BURGER KING® restaurants, which reputation and image have been, and continue to be, valuable assets of BKC. BKC strives to maintain that reputation through its careful selection of franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

**<u>THE FRANCHISE AGREEMENT AND GUARANTY</u>**

29. Fritz Management previously owned and operated BURGER KING® No. 5599 located at 1313 South Highway 121, Lewisville, Texas, 75067 (the "Restaurant") pursuant to a franchise agreement dated December 31, 2012 (the "Franchise Agreement"). A true and correct

copy of the Franchise Agreement is attached as Exhibit "A."

30. The Franchise Agreement was entered with Burger King Corporation, but was assigned to BKC.

31. Contemporaneously with the execution of the Franchise Agreement, Perales executed a personal guaranty (the "Guaranty") in which he absolutely and unconditionally guaranteed the payment and performance of each and every obligation of Fritz Management to BKC under the Franchise Agreement. A true and correct copy of the Guaranty is attached as Exhibit "B."

32. The Franchise Agreement requires Fritz Management to, among other things, operate the Restaurant in accordance with the operating standards and specifications established by BKC as to service, cleanliness, health and sanitation.

33. The Franchise Agreement contains provisions regarding default and establishing the parties' rights and obligations in the event of a default by Fritz Management. The Franchise Agreement provides that a franchisee's failure to comply with any provision of the Franchise Agreement is a default of the Franchise Agreement. The Franchise Agreement further provides that "[i]f an act of default hereunder is committed by FRANCHISEE, and FRANCHISEE fails to cure the default after any required notice and within the cure period applicable, BKC may, at its option and without prejudice to any other rights or remedies provided for hereunder or by law, terminate the Franchise Agreement by written notice or otherwise."

34. The Franchise Agreement sets forth various obligations, restrictions and other covenants with which Fritz Management must comply upon the termination or expiration of the Franchise Agreement.

35. Terminated and expired franchisees are prohibited from identifying themselves as

either current or former BURGER KING® franchisees, from using any of BKC's trade secrets, promotional materials, the Marks, or any mark confusingly similar.

36. The Franchise Agreement requires that upon termination, the Defendants must immediately stop using the Marks and return to BKC the Ops Manual and all other materials containing trade secrets and proprietary information, and otherwise de-identify the Restaurant so that it is no longer recognizable as a BURGER KING® location. Specifically, Defendants were required to remove all BURGER KING® signage, trade dress, branding, menus, uniforms, and other indicia of a BURGER KING® restaurant.

37. Terminated and expired franchisees are further required, upon termination or expiration of their BURGER KING® franchise agreement(s), to immediately make such removals or changes in signs and the building as BKC shall request so as to effectively distinguish the building and premises from its former appearance and from any other BURGER KING® restaurant.

**THE TERMINATION OF THE FRANCHISE AGREEMENT**

38. By letter dated August 17, 2026, BKC notified Defendants that Fritz Management had defaulted under the Franchise Agreement by failing to operate the Restaurant and/or maintain the premises of the Restaurant in conformity with BKC's operating standards and specifications as to service, cleanliness, health and sanitation.

39. Defendants did not timely cure all of the defaults.

40. On September 3, 2026, BKC sent Defendants a letter informing them that the Franchise Agreement was deemed terminated.

41. In violation of the Franchise Agreement and Guaranty, both Defendants continue to hold themselves out to the public as owning and/or operating the Restaurant as a genuine and

authorized BURGER KING® Restaurant by continuing to display and/or use the Marks at the Restaurant subsequent to the Franchise Agreement's termination. In so doing, Defendants are infringing upon the Marks and breaching their explicit obligations under the Franchise Agreement.

42. Additionally, Defendants have not returned the OPS Manual and other operational manuals to BKC as required by the Franchise Agreement.

**LIKELIHOOD OF CONSUMER CONFUSION**

43. Fritz Management and Perales have both failed to tender to BKC or remove all BURGER KING® signs, logos, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items bearing the Marks, name, symbols, or slogans, or which are otherwise identified with BURGER KING® restaurants and are located at the Restaurant.

44. Fritz Management and Perales's continued use and display of the Marks or any items associated with the BURGER KING® name, symbols, or slogans at the Restaurant is without BKC's license or consent, and has caused or is likely to cause mistake, confusion, or deception in the minds of the public as to source, affiliation, and sponsorship. Upon seeing the familiar Marks, through Fritz Management and Perales's unauthorized use or display thereof, consumers will be deceived into concluding that the products and services sold at the Restaurant are made or supplied by BKC, are prepared in the prescribed BKC manner and subject to BKC's supervision, are sponsored or endorsed by BKC, and bear the Marks pursuant to BKC's authority and permission. Such impressions are calculated to and will have a material influence on customers' purchasing decisions, inducing them to patronize the Restaurant in reliance on the goodwill, reputation, and appeal of BKC.

45. Perales, through the operation of his company, Fritz Management, and acting in

his capacity as an owner and officer of Fritz Management, has actively and knowingly used the Marks following the termination of the Franchise Agreement. Perales directs and controls the operation of Fritz Management and the Restaurant and is responsible for marketing, which includes the unauthorized use of the Marks. Perales actively and knowingly caused the unlawful use of the Marks and personally took part in the infringing use of the Marks through, among other things, his decision to continue to use the Marks at the Restaurant following the termination of the Franchise Agreement.

46. By reason of the foregoing, BKC has suffered damages, in an amount presently unknown yet substantial.

47. BKC will suffer serious, immediate and irreparable harm if Fritz Management and Perales's willful infringement of the Marks at the Restaurant is not immediately enjoined. BKC's goodwill and reputation will suffer by virtue of the public's identification of BKC with the Restaurant bearing its Marks.

48. Fritz Management and Perales's display of the Marks at the Restaurant poses an immediate threat to the distinct, exclusive image BKC has created at great expense for its franchisees. BURGER KING® restaurants, services, and products and known by the Marks which are emblematic of their distinctive source. BURGER KING® restaurants enjoy a special appeal to consumers which will be diluted by the existence of the infringing restaurant with products and services bearing the distinctive Marks. The intangible, but commercially indispensable, value that BURGER KING® restaurants now enjoy will be severely undermined by the use and display of the Marks at the Restaurant.

49. BKC is no longer the source or sponsor of the Restaurant and does not endorse the Restaurant, or the products and services provided therein, has not authorized Defendants to

use or display the Marks to identify the terminated franchise facility, products, or services, and has protested expressly against such use.

50. By virtue of the termination of the Franchise Agreement, BKC is unable to control the nature and quality of the goods and services that Defendants provide at the Restaurant.

51. BKC exercises strict quality control over every phase in the marketing of BURGER KING® products and services, from specification of ingredients, to the supervision of food preparation and handling, to the maintenance of strict standards as to cleanliness, health, sanitation, and quality of service. The carefully nurtured image which BKC now enjoys will be irretrievably injured by any association with the Restaurant, which no longer is subject to BKC's control and supervision.

52. Consumer confusion as to the source or sponsorship of restaurants bearing the Marks will be attended not only by an inevitable loss of product distinctiveness, image, and goodwill, but will also cause a diversion of sales from BKC. The economic injury to BKC resulting from such diversion is incalculable and, as such, is an additional source of irreparable harm.

53. Defendants have agreed in writing that in any litigation to enforce the terms of the agreements between BKC and Defendants, BKC, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

54. BKC has engaged undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between BKC and Defendants.

55. All conditions precedent to the institution of this action have been satisfied,

discharged, excused, and/or waived.

**COUNT I**
**LANHAM ACT INFRINGEMENT**
**(Against Fritz Management and Perales)**

56. BKC re-alleges Paragraphs 1 through 55 above as if fully set forth herein.

57. Fritz Management and Perales's acts, as described above, constitute infringement of BKC's registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**COUNT II**
**LANHAM ACT FALSE DESIGNATIONS**
**(Against Fritz Management and Perales)**

58. BKC re-alleges Paragraphs 1 through 55 above as if fully set forth herein.

59. Fritz Management and Perales's acts, as described above, constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT**
**(Against Fritz Management and Perales)**

60. BKC re-alleges Paragraphs 1 through 55 above as if fully set forth herein.

61. Fritz Management and Perales's acts, as described above, constitute unlawful trademark and service mark infringement under the common law.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**
**(Against Fritz Management and Perales)**

62. BKC re-alleges Paragraphs 1 through 55 above as if fully set forth herein.

63. Fritz Management and Perales's acts, as described above, constitute unfair competition under the common law.

**COUNT V**
**BREACH OF FRANCHISE AGREEMENT**
**(Against Fritz Management)**

64. BKC re-alleges Paragraphs 1 through 55 above as if fully set forth herein.

65. Fritz Management breached the Franchise Agreement by failing to operate the Restaurant in compliance with BKC's standards, specifications with regard to food safety and brand standards, despite demand.

66. Additionally, Fritz Management has not complied with the Franchise Agreement's post-termination obligations requiring, among other things, that Fritz Management cease and desist from all use of the Marks at the Restaurant.

67. These breaches have directly and proximately caused loss and damage to BKC.

**COUNT VI**
**BREACH OF GUARANTY**
**(Against Perales)**

68. BKC re-alleges Paragraphs 1 through 55 and 65 through 67 above as if fully set forth herein.

69. Fritz Management breached the Franchise Agreement by failing to operate the Restaurant in compliance with BKC's standards, specifications with regard to food safety and brand standards, despite demand.

70. Additionally, Fritz Management has not complied with the Franchise Agreement's post-termination obligations requiring, among other things, that Fritz Management cease and desist from all use of the Marks at the Restaurant.

71. Pursuant to the Guaranty, Perales jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of Fritz Management to BKC under the Franchise Agreement should Fritz Management fail to perform such obligations.

72. The failure of Perales to ensure Fritz Management's compliance with its obligations under the Franchise Agreement constitutes a breach of the Guaranty.

73. These breaches have directly and proximately caused loss and damage to BKC.

**DEMAND FOR ATTORNEYS' FEES**

74. The Franchise Agreement and Guaranty at issue in this litigation provide that the prevailing party is entitled to its attorneys' fees and costs. Pursuant to those provisions, BKC hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

**REQUEST FOR RELIEF**

WHEREFORE, Burger King Company, LLC, demands judgment against Defendants Fritz Management, LLC and Guillermo Perales for:

1. Preliminary and permanent injunctions enjoining Defendants, and all persons acting on their behalf, in concert with them, or under their control, from:

(a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Restaurant;

(b) displaying or using any of the Marks to advertise or promote the sale of, or to identify, the Restaurant, or any product or service provided therein; and

(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants, the Restaurant, and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by BKC.

2. Preliminary and permanent injunctions directing Defendants, and all persons

acting on their behalf, in concert with them, or under their control, to, with respect to the Restaurant:

(a) recall and deliver up to BKC all signs, banners, labeling, packaging, advertising, promotional, display, and point-of-purchase materials from the Restaurant which bear, or make reference to, any of the Marks, or any colorable imitation of the Marks;

(b) recall and deliver up to BKC all copies and editions of the OPS Manuals in connection with the Restaurant that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto, and all other materials containing restaurant operating instructions, restaurant business practices, or plans of BKC;

(c) allow BKC, at a reasonable time, to enter the premises of the Restaurant and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from their appearance as a BURGER KING® Restaurant; and

(d) account and pay over to BKC all gains, profits, and advantages derived by Defendants from their trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117, and by the controlling principles of common law.

3. Money damages, plus three times additional actual damages BKC has sustained by reason of Defendants' trademark and service mark infringement, breach of contract, and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

4. Punitive damages because of the willful nature of Defendants' actions;

5. Pre-judgment interest and BKC's reasonable attorneys' fees incurred in protecting its rights in this action in accordance with the terms of the Franchise Agreement and, because of

the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6. An order directing Defendants to file with the Court, and to serve on BKC's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

7. Judgment against Defendants Fritz Management, LLC and Guillermo Perales, jointly and severally, for damages, including lost profits, attorneys' fees, interest and costs pursuant to the Franchise Agreement and Guaranty;

8. All costs, disbursements, and expenses of this action; and

9. All such other relief as this Court may deem just and proper.

Dated: October 7, 2026

Respectfully submitted,

/s/ Aaron S. Blynn

Michael D. Joblove, Esq.
Florida Bar No.: 354147
mdjoblove@venable.com
Aaron S. Blynn, Esq.
Florida Bar No.: 073464
asblynn@venable.com
VENABLE LLP
801 Brickell Avenue
Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Plaintiff Burger King Company, LLC*